# EXHIBIT A

DAKOTA CO SHERIFF
HASTINGS MN

STATE OF MINNESOTA                                              DISTRICT COURT

COUNTY OF DAKOTA         2017 MAR -1  A 10: 59    FIRST JUDICIAL DISTRICT
                                                                   Other Civil:

---

Rebecca M. Grunst,                          Honorable
                                            Court File No.:
    Plaintiff,

v.
                                                    SUMMONS

Wings Financial Credit Union,

    Defendant.

---

**THIS SUMMONS IS DIRECTED TO** Wings Financial Credit Union.

1. **YOU ARE BEING SUED.**

   The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.**

   You must give or mail to the person who signed this Summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

   The Cooper Law Firm, Chartd.
   Stephen W. Cooper
   Loring Green East
   1201 Yale Place, Suite A-100
   Minneapolis, MN 55403
   (612) 338-3533

1

3. **YOU MUST RESPOND TO EACH CLAIM.**

   The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.**

   If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.**

   You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATIVE DISPUTE RESOLUTION.**

   The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

_____        February 27, 2017
Plaintiff's attorney's signature            Dated

Stephen W. Cooper
Print or type plaintiff's attorney's name

6. Plaintiff informed Ms. Short she was depressed, as a close friend just passed away. Ms. Short approved Plaintiff's time off.

7. Plaintiff and Defendant continued to communicate about Plaintiff's depression. Ms. Short provided Plaintiff with an employee help-line number to help her with her depression. Ms. Short reassured Plaintiff her job was not in jeopardy. Ms. Short instructed Plaintiff to start communicating with Kevin Gerber, another supervisor, about her situation.

8. On Wednesday morning, July 20, 2016, Plaintiff informed Kevin Gerber she was not doing well. She informed him that, in addition to the many family issues she was experiencing at that time, her close friend had been hit by a truck and passed away. She told him she had been crying non-stop and was experiencing constant headaches. She revealed she had been feeling down and not herself and that she needed time to process her thoughts and grieve.

9. On Friday morning, July 22, 2016, Plaintiff informed Mr. Gerber she was not ready to return to work that day and, if needed, would get a note from her doctor.

10. Mr. Gerber responded that if she provided a doctor's note, she could return to work. He stated that Human Resources was aware of and monitoring her situation.

11. On July 22, 2016, Plaintiff's doctor stated:

> "Rebecca Grunst was seen in my clinic on 7/22/2016. She has had to miss work for 1 week from 7/18/16 due to grief reaction. She may return to work on 7/30. If you have any questions or concerns, please don't hesitate to call."

12. On Sunday, July 24, 2016, Plaintiff informed Mr. Gerber that when she saw her doctor on Friday, July 22, 2016, to get a note to return to work, her doctor felt she required, at least, another week away from work. Plaintiff informed Mr. Gerber she had many concernful things going on at the same time, including family issues and learning her stepfather had health concerns. She stated her friend's death pushed her over the edge. She informed Mr. Gerber she had been placed on medications for depression.

13. The following afternoon, Monday, July 25, 2016, Mr. Gerber thanked Plaintiff for providing the note from her doctor and stated:

2

> "Since you've been a good employee for me I will approve this time off for you unpaid. I will expect you back in the office then on Friday per [the doctor's] note."

14. On Thursday afternoon, July 28, 2016, Plaintiff informed Mr. Gerber her doctor ordered her to not work on Friday, July 29, 2016. The following morning, Mr. Gerber responded, "OK, we will see you at ten fifteen Monday for the late shift."

15. The morning of Monday, August 1, 2016, prior to the start of her work shift, Plaintiff was rushed to the hospital by ambulance. She was hospitalized as the result of a negative reaction to her medication.

16. Prior to her ambulance transport on August 1, 2016, Plaintiff notified Mr. Gerber she would not be in that day. Plaintiff's start time for work was 10:15 a.m. Later that afternoon, her supervisor informed her she had been terminated, effective that day.

17. On August 1, 2016, because Plaintiff was hospitalized and unable to speak to Defendant directly, her boyfriend called Human Resources prior to the end of her work shift and provided additional information about Plaintiff's hospital stay.

18. Defendant's Human Resources refused to discuss anything with Plaintiff's boyfriend and transferred him to Kevin Gerber. He reiterated to Kevin Gerber that Plaintiff was in the hospital and had had her phone taken from her.

19. On August 2, 2016, Plaintiff's doctor stated:

> "Rebecca M Grunst required inpatient hospitalization between 8/1/16 and 8/2/16. She was unable to attend work at that time. She is able to return to full duties on 8/8/16."

20. Despite Plaintiff's Doctor's opinion and the fact that Plaintiff had been approved for two weeks off (Plaintiff's hospital stay on Monday, August 1, 2016, was the only day not approved), on August 4, 2016, Cheryl Thomas, VP Human Resources and Employee Development, noted "Based on the current business needs of the department and with no expected return to work date being communicated, Kevin [Gerber] made a business decision not to hold your job any longer."

21. On August 4, 2016, Plaintiff reiterated to Ms. Thomas she had emailed Mr. Gerber on August 1, 2016, just prior to when her ambulance arrived and transported her to

3

the emergency room, after which she was admitted to the hospital for the night. The medical personnel took her phone away. Plaintiff informed Ms. Thomas she did have a return to work date.

22. On August 5, 2016, Plaintiff contacted Ms. Thomas and others at Defendant to reiterate her request to return to work. This was denied without any legitimate reason.

23. Defendant took these steps with full knowledge that Plaintiff had been admitted to the hospital on Monday and Tuesday for legitimate medical reasons, that Plaintiff's doctor had provided a specific return to work date (Monday, August 8), that Plaintiff had provided the required return-to-work doctor's note, that Plaintiff suffered from a disability and, finally, that Plaintiff had always been an excellent employee.

24. Only the day Plaintiff was transported to the hospital by ambulance and required to stay until the next day, was not a pre-approved absence. The termination was motivated by bias regarding her disability and hospitalization. Defendant had no legitimate basis to terminate Plaintiff.

25. Defendant refused to accept any additional information regarding Plaintiff's disability and medical emergency and refused to discuss the matter further.

26. Defendant failed to reasonably accommodate Plaintiff's need for hospitalization to address her medical emergency.

## COUNT ONE
## DISABILITY DISCRIMINATION AND AIDING AND ABETTING DISABILITY DISCRIMINATION IN EMPLOYMENT

Plaintiff realleges each and every paragraph of this Complaint.

27. Defendant discriminated against Plaintiff and its agents aided and abetted each other in their discrimination against Plaintiff with respect to hiring, tenure, terms, conditions, facilities, and privileges of employment, in violation of Minn. Stat. §363.03A, et seq., and 42 U.S.C. §12101, et seq.

28. Plaintiff has a disability and/or a record of disability and/or is perceived as having a disability.

29. Plaintiff has a physical, sensory or mental impairment which materially/ substantially limits one or more major life activities, has a record of such an impairment and/or is regarded as having such an impairment.

30. The conduct of Defendant during the course of Plaintiff's employment and her termination constitutes disability discrimination in employment on the basis of disability, as well as, a failure to reasonably accommodate, in violation of Minn. Stat. §363.03A, et seq., and 42 U.S.C. §12101, et seq.

31. This action is timely commenced pursuant to Minn. Stat. §363A, et seq., and 42 U.S.C. §12101, et seq.

32. The conduct alleged constitutes a continuing violation.

33. The discriminatory conduct of employees of Defendant toward Plaintiff and the failure of supervisors to respond to the problem, appropriately altered the terms and conditions of Plaintiff's employment.

34. Management failed to take timely and appropriate action to remedy the discrimination of Plaintiff and, instead, treated and allowed others to treat Plaintiff negatively because of her disability.

35. With reasonable accommodation, Plaintiff was able to adequately perform her job duties.

36. Defendant failed to reasonably accommodate Plaintiff.

37. Defendant's agents had supervisory authority over Plaintiff and, as such, they acted in the capacity of Plaintiff's employer.

38. Defendant and its agents aided and abetted each other in the discriminatory conduct during the course of Plaintiff's employment, in violation of Minn. Stat. §363.03A, et seq., and 42 U.S.C. §12101, et seq.

39. As a direct result of Defendant and its employees and/or agents' actions, Plaintiff has suffered and continues to suffer emotional distress and anguish, personal injury, physical injury, past, present and future loss of wages, compensation and other economic opportunities and benefits, actual damages, compensatory damages, consequential damages, special damages, loss of personal and professional reputation, loss of career opportunities and other damages.

## COUNT TWO
## NEGLIGENCE

Plaintiff realleges each and every paragraph of this Complaint.

40. Defendant had a special relationship with Plaintiff.

41. Defendant had a duty to not harm Plaintiff, to protect her from harm, and to warn her of foreseeable harm.

42. Defendant's actions and inactions failed to fulfill this duty.

43. As a direct and proximate result of Defendant's breach of duty, Plaintiff has suffered harm.

44. Both the injury to Plaintiff and the damage that resulted therefrom, were reasonably foreseeable to Defendant.

45. As a direct result of Defendant's and its employees and/or agents' actions, Plaintiff has suffered and continues to suffer emotional distress and anguish, personal injury, physical injury, past, present and future loss of wages, compensation and other economic opportunities and benefits, actual damages, compensatory damages, consequential damages, special damages, loss of personal and professional reputation, loss of career opportunities and other damages.

## COUNT THREE
## INTERFERENCE WITH FMLA PROTECTIONS AND RETALIATION

Plaintiff realleges each and every paragraph of this Complaint.

46. Plaintiff was eligible for the protections of the Family and Medical Leave Act and Parenting Leave and Accommodations Statute and had a serious medical condition as defined by them. The Family and Medical Leave Act of 1993 and Minnesota Statutes, Chapter 181.

47. Plaintiff required hospitalization as a result thereof, lasting more than one day.

48. Defendant terminated Plaintiff's employment for going to the hospital.

49. Defendant, with full knowledge of the facts of the situation, refused to allow

Plaintiff to resume her duties, citing pretextual excuses for doing so, in an effort to mask its discriminatory behavior.

50.  As a direct result of Defendant's and its employees and/or agents' actions, Plaintiff has suffered and continues to suffer emotional distress and anguish, personal injury, physical injury, past, present and future loss of wages, compensation and other economic opportunities and benefits, actual damages, compensatory damages, consequential damages, special damages, loss of personal and professional reputation, loss of career opportunities and other damages.

WHEREFORE, Plaintiff prays for judgment as set forth below and for the following relief:

a.  Against Defendant for Count One for three times actual damages, compensatory damages, consequential damages, special damages, damages for loss of personal and professional reputation, loss of career opportunities, emotional distress and anguish, personal injury, physical injury, past, present and future loss of wages, compensation and other economic opportunities and benefits, and other damages in a reasonable amount in excess of $50,000.00.

b.  Against Defendant for Counts Two and Three for actual damages, compensatory damages, consequential damages, special damages, damages for loss of personal and professional reputation, loss of career opportunities, emotional distress and anguish, personal injury, physical injury, past, present and future loss of wages, compensation and other economic opportunities and benefits, and other damages in a reasonable amount in excess of $50,000.00.

c.  For all attorneys' fees and costs.

d.  For equitable and injunctive relief, fashioned so as to assure redress and prospective protection from such behaviors.

e.  For any such other and further relief as the Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL JURY COUNTS.**

|  |  |
|---|---|
| February 27, 2017 | THE COOPER LAW FIRM, CHARTERED<br><br>By: _____<br>Stephen W. Cooper, Lic. 18788<br>Stacey R. Everson, Lic. 219277<br>Attorneys for Plaintiff<br>Loring Green East<br>1201 Yale Place, Suite A100<br>Minneapolis, MN  55403<br>(612) 338-3533 |

### Acknowledgment of Minn. Stat. §549.21

It is hereby acknowledged that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party.

_____
Stephen W. Cooper